**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **SULEMA GARZA,** | § | |
| | § | |
| **Plaintiff,** | § | **JURY DEMAND** |
| | § | |
| **v.** | § | **Civil Action No. 4:11-cv-00161-Y** |
| | § | |
| **NEW BREED LOGISTICS, INC.,** | § | **District Judge Terry R. Means** |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S AMENDED MOTION TO**
**QUASH AND FOR PROTECTION AND BRIEF IN SUPPORT**

David L. Wiley
Texas State Bar No. 24029901
Amy E. Gibson
Texas State Bar No. 00793801
Gibson Wiley PLLC
1700 Commerce Street, Suite 1570
Dallas, Texas 75201-5302
Telephone: (214) 522-2121
Facsimile: (214) 522-2126
E-Mail Addresses:
david@gwfirm.com
amy@gwfirm.com

Enrique Chavez, Jr.
Texas State Bar No. 24001873
Chavez Law Firm
2101 Stanton Street
El Paso, Texas 79902
Telephone: (915) 351-7772
Facsimile: (915) 351-7773
Email Address:
chavezlaw7773@sbcglobal.net

## TABLE OF CONTENTS

| **Description** | **Page Number** |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii |
| I. NATURE OF THE CASE | 1 |
| II. SUMMARY OF ARGUMENT | 2 |
| Agreements | 2 |
| Material Need for the Deposition | 2 |
| No Substitute for Mr. Valitutto's Knowledge | 3 |
| Timing of the Deposition Request | 4 |
| Attorney-Client Privilege and Work Product | 6 |
| III. DISCOVERY HISTORY | 7 |
| Written Discovery: New Breed Does Not Disclose Involvement of Mr. Valitutto and Others at North Carolina Headquarters | 7 |
| Depositions: Recent Revelations of Involvement in Termination Decision | 10 |
| Diligence | 14 |
| IV. ARGUMENT AND AUTHORITIES | 16 |
| A. No work product at issue | 16 |
| B. Texas attorney-client privilege rules allow Deposition to move forward | 17 |
| C. Texas Law on Privilege Applies and Permits Deposition of an Attorney | 20 |
| SIGNATURE BLOCK | 23 |
| CERTIFICATE OF SERVICE | 24 |

<u>**TABLE OF AUTHORITIES**</u>

<u>**Description**</u>                                                                    <u>**Page Number**</u>

**CASES**

   FEDERAL COURT OF APPEALS

      *Dunn v. State Farm*, 927 F.2d 869 (5th Cir. 1991)                              19

      *Hodges, Grant & Kaufman v. U.S. Gov't, Dept. of Treasury, I.R.S.*,
      768 F.2d 719 (5th Cir. 1985)                                                   20

      *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281 (5th Cir. 2005)                    17

      *Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999)                          20

      *Salter v. Upjohn*, 594 F.2d 649 (5th Cir. 1979)                               17

      *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)                   18

   FEDERAL DISTRICT COURT

      *Conoco v. Boh Brothers Construction Co.*,
      191 F.R.D. 107, 118, n.6 (W.D. La. 1998)                                       19

      *Delor v. Intercosmos Media Group, Inc.*,
      No. 2:04-cv-03262 (E.D. La. June 27, 2005)                                     20

      *Horizon Holdings, LLC v. Genmar Holdings, Inc.*,
      No. 2:01-cv-02193 (D. Kan. June 13, 2002)                                      18

      *Kasper v. Cooper Canada Ltd.*,
      120 F.R.D. 58 (N.D. Ill. 1988)                                                 15-16

      *Mill-Run Tours, Inc. v. Khashoggi*,
      124 F.R.D. 547 (S.D.N.Y. 1989)                                                 14

      *Murphy v. Adelphia Recovery Trust*,
      No. 3:09-mc-00105-B-BD (N.D. Tex. 2009)                                        18

      *New Medium Tech, LLC v. Barco N.V.*,
      242 F.R.D. 460 (N.D. Ill. April 30, 2007)                                      14

      *Scooter Store, Inc. v. Spinlife.com, LLC*,
      No. 2:10-cv-18 (S.D. Ohio May 25, 2011)                                        15

**TABLE OF AUTHORITIES**

<u>**Description**</u>                                                                         <u>**Page Number**</u>

TEXAS COURTS OF APPEALS

*Hilliard v. Heard,* 666 S.W.2d 584
(Tex. App.—Houston [1st Dist.] 1984, orig. proceeding)                    18

*In re Mason & Co. Prop. Mgmt*., 172 S.W.3d 308
(Tex. App.—Corpus Christi 1989, orig. proceeding)                          18

*Nat'l Union Fire Ins. Co. v. Hoffman*,
746 S.W.2d 305 (Tex. App.—Dallas 1988, orig. proc.)                      6

*Borden, Inc. v. Valdez*, 773 S.W.2d 718
(Tex. App.—Corpus Christi 1989, orig. proceeding)                          18-19

**STATUTES**

28 U.S.C. § 1404(a)                                                                       15

28 U.S.C. § 1332                                                                           17

**FEDERAL RULES**

Federal Rule of Civil Procedure 26(b)(5)(A)                                      8

Federal Rules of Civil Procedure 26(b)(3)(A)                                    20

Federal Rules of Civil Procedure 26(b)(3)(b)                                    20

Federal Rule of Evidence 501                                                         17

**STATE RULES**

Texas Rule of Civil Procedure 194.2(e)                                           6

Texas Rule of Civil Procedure 193.3(a)                                          6, 8

Texas Rule of Evidence 503                                                          18

**SECONDARY AUTHORITY**

8A Charles Alan Wright, Arthur R. Miller, Richard L. Markus,
*Federal Practice & Procedure* § 2112 (3d ed. 2010)                        15

6 Moore's Federal Practice §26.70[7] (Matthew Bender 3d ed.)          20

Plaintiff Sulema Garza, through undersigned counsel, files and serves Plaintiff's Response to Defendant's Motion to Quash and for Protection and Brief in Support and respectfully states as follows.[1]

## I. NATURE OF THE CASE

1.     This is an employment discrimination and retaliation case brought pursuant to the Texas Commission on Human Rights Act.[2]  Ms. Garza alleges that her former employer New Breed Logistics, Inc. ("New Breed") unlawfully subjected her to harassment based on sex and then retaliated against her via termination and other adverse actions because she opposed the sex-based harassment.[3]  Ms. Garza also asserts a claim for assault.[4]

---

[1]     Unless otherwise noted, Ms. Garza's attorneys have supplied all emphases, omitted from quotations of judicial opinions all internal citations and quotation marks, and omitted from all citations to judicial opinions all internal citing references.

    Ms. Garza's attorneys refer to Defendant's Amended Motion to Quash and for Protection and Brief in Support as the "Motion."   Ms. Garza's attorneys refer to Plaintiff's Response to Defendant's Amended Motion to Quash and for Protection and Brief in Support as the "Response."

    Pursuant to Local Civil Rule 7.1(i), the evidence and other documents supporting the Response are contained in the separately filed Appendix in Support of Plaintiff's Response to Defendant's Amended Motion to Quash and for Protection (the "Appendix").

[2]     *See* Appendix, pp. 2, 4-6 ¶¶ 2, 11-14 [Plaintiff's Original Petition].

[3]     *See id.*

[4]     *See id.* at pp. 4-6 ¶ 11, 15.

## II. <u>SUMMARY OF ARGUMENT</u>

### <u>Agreements</u>

2.     The Motion correctly identifies the parties' agreements concerning the place, date, and time of any oral deposition of Richard Valitutto.[5]  With respect to the method of taking the deposition, Ms. Garza clarifies that the parties' agreement was to allow Ms. Garza's attorneys the option to remain in Texas and the option to take the oral deposition via video conference using Skype or similar technology [as opposed to merely videotaping the deposition].

### <u>Material Need for the Deposition</u>

3.     New Breed itself caused the need for Richard Valitutto's deposition due to decision-maker finger pointing and conflicting accounts as to who made the adverse employment decisions in this case.  Significantly, this is a "cat's paw" retaliation case —
*i.e.*, Ms. Garza seeks to hold New Breed liable for the retaliatory animus of an employee who influenced, but did not make, the ultimate decision to fire Ms. Garza.[6]  As such, Ms. Garza has pursued, as she must, evidence concerning what precisely occurred at each stage of the decisional process as well as more general information concerning the overall

---

[5]     *See* Motion, p. 3.

[6]     Ms. Garza believes Human Generalist Rodney Franklin — who handled Ms. Garza's sexual harassment complaint and was involved in all adverse employment decisions at issue in this case — harbored the retaliatory animus.  Ms. Garza has also pursued discovery concerning influence of the co-worker accused of sexual harassment in relation to the decisions to suspend and terminate Ms. Garza.

decisional process itself.  Further, courts have concluded that the very fact of conflicting or shifting accounts as to who made the relevant employment decisions may be evidence of pretext.

4.      Witnesses have pointed to Mr. Valitutto as the person who made the ultimate decision to terminate Ms. Garza's employment.  One witness has further pointed to Mr. Valitutto as a person involved in an earlier unpaid suspension decision at issue in this case.  New Breed claims Ms. Garza "is misreading" the deposition testimony,[7] but it offers a deposition errata sheet and indicates another deposition errata sheet is expected.[8] If Ms. Garza was truly misreading the original deposition testimony, there would be no need for errata sheets changing the witnesses' answers on these issues.  New Breed's preferred version of conflicting testimony cannot foreclose permissible discovery.

### No Substitute for Mr. Valitutto's Knowledge

5.      Although New Breed has offered a stipulation in lieu of deposition, the stipulation itself is conclusory and wholly insufficient with respect to pursuit of a cat's paw case.  Moreover, a stipulation is a poor substitute for an oral deposition.  Ms. Garza simply is not required to accept a stipulation in lieu of permissible and preferred methods of discovery.

6.      New Breed appears to suggest the deposition of former New Breed

---

[7]      *See* Motion, p. 3 ("Defendant believes Plaintiff is misreading the testimony.").

[8]      *See id.* at pp. 3-4 & Appendix to Motion, Exhibit D.

employee Denise Ball in lieu of Mr. Valitutto's oral deposition.  As New Breed acknowledges, Ms. Garza previously and timely sought to depose Ms. Ball.[9]  However, to date, no party has been able to locate Ms. Ball.  Even if Ms. Ball was located, nothing indicates that Ms. Ball — who worked for New Breed in Fort Worth — will have any remote idea [much less admissible evidence] about what actually transpired in North Carolina.

7.      Ms. Garza simply is not aware of any substitute for Mr. Valitutto's testimony about what Mr. Valitutto reviewed, relied upon, and otherwise did.  During the course of discovery, witnesses have not been able to testify to what transpired in that respect.  Further hampering discovery,  Human Resources Generalist Rodney Franklin [believed to have the retaliatory animus in this case] admittedly shredded his notes, deleted his emails, and deleted all electronic word processing documents concerning the investigation into Ms. Garza's complaints [and hence any communications with Mr. Valitutto].[10]

## Timing of the Deposition Request

8.      Despite Ms. Garza's written discovery requests that should have caused New Breed to reveal the information, New Breed had not, until very recently, disclosed in written discovery responses the involvement of anyone at its North Carolina headquarters in the suspension decisions involved in this case or the termination of Ms.

---

[9]      See id. at p. 4.

[10]      See Appendix, pp. 77-81.

Garza's employment.[11]  With respect to oral depositions that went forward beginning August 10, 2011, Ms. Garza had requested all of these depositions more than five months earlier.

9.      On August 12, 2011, Melissa Buntaine — a Human Resources Manager at New Breed's Fort Worth location and a person identified in New Breed's interrogatory answers as having made the decision to terminate Ms. Garza — appeared for her oral deposition.  Ms. Buntaine testified that she merely reviewed a recommendation to terminate Ms. Garza and pointed to New Breed North Carolina headquarters and specifically Mr. Valitutto with respect to the ultimate decision to terminate Ms. Garza. Her testimony contradicted New Breed's answers to interrogatories requesting the identities and roles of persons who participated in, recommended, and made the decision to terminate Ms. Garza's employment.

10.      On August 16, 2011, Rodney Franklin — a former Human Resources Generalist at New Breed's Fort Worth location and the sole person identified in New Breed's interrogatory answers as having recommended Ms. Garza's termination — appeared for his oral deposition.  Mr. Franklin denied that he ever recommended termination of Ms. Garza's employment.  Mr. Franklin also pointed to New Breed North Carolina headquarters — and specifically Richard Valitutto — as involved in suspension

---

[11]      New Breed finally disclosed Mr. Valitutto's involvement only <u>after</u> Ms. Garza filed Plaintiff's Response to Defendant's [Original] Motion to Quash and for Protection.

events in this case.[12]

11.     Within *3 calendar days* after the August 16, 2011 deposition, Ms. Garza's counsel conferred with New Breed's counsel about deposing persons located at North Carolina headquarters — in light of first disclosure in depositions and contradictory interrogatory answers.[13]  New Breed's counsel did not respond with an answer.  The next week, due to the lack of response, Ms. Garza's counsel again raised the issue at an August 24, 2011 deposition in this case.  At that time, New Breed's counsel promised an answer at mediation on August 25, 2011.  When no answer came on August 25, 2011, Ms. Garza the next day served a Notice to Take the Oral Deposition of Person Identified in Oral Depositions as Richard Valitutto[14] (the "Notice").

## Attorney-Client Privilege and Work Product

12.     This case involves only state law claims.  New Breed removed the case from state court to federal court based on diversity jurisdiction.  In such a situation, state law governs the attorney-client privilege question, and federal law governs the work product question.  For both questions, New Breed bears the burden in the first instance of establishing each element of the attorney-client privilege and each element of the work

---

[12]     Mr. Franklin provided conflicting testimony on this issue.  However, based on discovery obtained to date, Ms. Garza does believe some communication with Mr. Valitutto in the time frame of the sexual harassment investigation and suspension caused or added to Mr. Fraklin's retaliatory animus.

[13]     At the time, Ms. Garza's counsel expected to be in a jury trial the week of August 29, 2011 and thus conferred on leave to take these depositions.

[14]     *See* Appendix, p. 99 [2011-08-26 Email].

product doctrine.  It has not made an effort to do so.

13.     Indeed, despite global work product claims, it is almost inconceivable that Mr. Valitutto or New Breed anticipated litigation at the time of the events about which Ms. Garza seeks to question Mr. Valitutto. Ms. Garza filed a Charge of Discrimination shortly <u>after</u> New Breed terminated her employment.  With respect to attorney-client privilege, Mr. Valitutto's affidavit indicates that he had veto power over employment decisions and thus injected himself into <u>making business decisions</u> for New Breed [rather than acting in a merely advisory capacity].

14.     The *Shelton* analysis — which the Fifth Circuit has discussed but never explicitly adopted — does not apply in this case [even if it potentially could apply].  New Breed has not made the initial showing necessary to trigger application of the *Shelton* analysis.  Further, Ms. Garza met the *Shelton* factors.

## III. <u>DISCOVERY HISTORY</u>

### Written Discovery: New Breed Does Not Disclose Involvement of <u>Mr. Valitutto and Others at North Carolina Headquarters</u>

15.     Throughout *written* discovery, New Breed did not disclose the involvement of <u>*anyone*</u> in the North Carolina headquarters until <u>very recently</u> — as this timeline shows:

> ►     <u>June 2010</u> [case in state court]: New Breed's disclosure responses did not list anyone in North Carolina as a person having knowledge of

relevant facts.[15]   Pursuant to Texas Rule of Civil Procedure 194, New Breed was required to disclose upon request the identities of persons having knowledge of relevant facts — without regard to whether it intended to use such facts to support its claims or defenses.[16]

►   June 2010 [case in state court]: New Breed responds to a document request seeking documents "discussing, mentioning, or reflecting your decision to terminate or your actual termination" of Ms. Garza.[17]   None of the documents that New Breed produced disclosed the involvement of its North Carolina headquarters in the termination decision.   New Breed's objection "to the extent it seeks information protected by the attorney-client privilege and work product doctrine" said nothing about whether documents were withheld based on privilege and was otherwise improper under Texas law.[18]

►   February 2011 [case in state court]: New Breed's first supplemental disclosure responses did not name anyone in North Carolina

---

[15]   *See* Appendix, pp. 9-13 [Defendant New Breed Logistics, Inc.'s Responses to Plaintiff's Request for Disclosure].   Defendant named seven persons:   Sulema Garza, Richard Staton, Deborah Maxwell, Teresa Falcon, Veronica Ruvalcaba, Aida Garcia, and Rodney Franklin.   *See id.*

[16]   *See* TEX. R. CIV. P. 194.2(e) (requiring disclosure of "the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case").

[17]   *See* Appendix, pp. 14-17 [Defendant New Breed Logistics, Inc.'s Objections and Responses to Plaintiff's First Request for Production] ("**DOCUMENT REQUEST NO. 37**   All Communications and other Documents, in both paper and electronic form, discussing, mentioning, or reflecting your decision to terminate or your actual termination of Sulema's employment with you;").

[18]   *See Nat'l Union Fire Ins. Co. v. Hoffman*, 746 S.W.2d 305, 307 n.3 (Tex. App.—Dallas 1988, orig. proc.) ("Reiterating an objection to producing documents 'to the extent that' they may fall within particular privileges is not the specific pleading *Peeples* requires. A litany like National Union's may be no more specific than a single blanket assertion that documents requested may be privileged."); *see also* TEX. R. CIV. P. 193.3(a) ("(a) Withholding privileged material or information.   A party who claims that material or information responsive to written discovery is privileged may withhold the privileged material or information from the response.   The party must state — in the response (or an amended or supplemental response) or in a separate document — that: (1) *information or material responsive to the request has been withheld*, (2) the request to which the information or material relates, and (3) the privilege or privileges asserted.").

as a person having knowledge of relevant facts.[19]

►    March 2011 [post-removal]: New Breed again supplemented its disclosure responses but did not name anyone in North Carolina as a person having knowledge of relevant facts.[20]

►    June 2011: [post-removal] New Breed's initial disclosures do not identify anyone in North Carolina as an individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.[21]

►    June 2011: [post-removal] New Breed's interrogatory answer does not name anyone in North Carolina as a person who recommended Ms. Garza's termination, participated in the decision to terminate Ms. Garza, or made the ultimate decision to terminate Ms. Garza.[22]

►    June 2011: [post-removal] New Breed's initial disclosures identify without limitation "correspondence, emails, notes and/or memoranda relevant to the claims made in the lawsuit" as documents it may use to support its claims or defenses.[23] Yet, none of the documents that New Breed has produced in this case disclosed the involvement of its North Carolina headquarters in the employment decisions at issue.

---

[19]    *See* Appendix, pp. 18-23 [Defendant New Breed Logistics, Inc.'s Supplemental Responses to Plaintiff's Request for Disclosures]. Defendant named twelve persons: Sulema Garza, Richard Staton, Deborah Maxwell, Teresa Falcon, Veronica Ruvalcaba, Melissa Buntaine, Jim Valdez, Shelly Finch, Saddie Anderson, Aida Garcia, Rodney Franklin, and Amanuel Woldai. *See id.*

[20]    *See* Appendix, pp. 26-32 [Defendant New Breed Logistics, Inc.'s Supplemental Disclosures]. Defendant named eighteen persons: Sulema Garza, Richard Staton, Deborah Maxwell, Teresa Falcon, Veronica Ruvalcaba, Melissa Buntaine, Jim Valdez, Shelly Finch, Saddie Anderson, Celeste Cavillo, Glenda Livingston, Aida Garcia, Rodney Franklin, Amanuel Woldai, Denise Ball, Rick Haines, Amy Dethoudam and Lynn Bates. *See id.*

[21]    *See* Appendix, pp. 33-41[Defendant New Breed Logistics, Inc.'s Initial Disclosures].

[22]    *See* Appendix, pp. 42-46 [Defendant New Breed Logistics, Inc.'s Objections and Answers to Plaintiff's Third Set of Interrogatories].

[23]    *See* Appendix, pp. 33-41 [Defendant New Breed Logistics, Inc.'s Initial Disclosures].

► June 2011: New Breed responds to two document requests seeking documents "generated, received, sent, forwarded, relied upon, or considered" in connection with internal investigation of Ms. Garza's complaints at issue and internal investigations of Ms. Garza.[24] None of the documents that New Breed produced disclosed the involvement of its North Carolina headquarters in the investigations [which led to the suspension at issue].

► No Privilege Log: Until recently, New Breed had never provided a privilege log, which Federal Rule of Civil Procedure 26(b)(5)(A) requires when a party "withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation materials."[25] New Breed only provided a privilege log after Ms. Garza filed her response to its original motion to quash and for protection.

► No State Court Withholding Statement for Privilege: Texas Rule of Civil Procedure 193.3(a) requires a withholding statement when a party claims material or information responsive to written discovery is privileged, subject to exceptions not at issue here.[26] New Breed has never provided a withholding statement for any written discovery request.


**Depositions: Recent Revelations of Involvement in Termination Decision**


16.   In unsworn interrogatory answers, New Breed had stated the following:[27]

---

[24]   *See* Appendix, pp. 47-50 [Defendant New Breed Logistics, Inc.'s Objections and Responses to Plaintiff's Second Request for Production, Document Request Nos. 11 & 12].

[25]   *See* FED. R. CIV. P. 26(b)(5)(A).

[26]   *See* TEX. R. CIV. P. 193.3(a) ("(a) Withholding privileged material or information. A party who claims that material or information responsive to written discovery is privileged may withhold the privileged material or information from the response. The party must state — in the response (or an amended or supplemental response) or in a separate document — that: (1) *information or material responsive to the request has been withheld*, (2) the request to which the information or material relates, and (3) the privilege or privileges asserted.").

[27]   *See* Appendix, p. 43 [Defendant New Breed Logistics, Inc.'s Objections and

Subject to and without waiving the foregoing objections, Defendant answers as follows: The decision to terminate Plaintiff's employment was made by New Breed HR employees Denise Ball and Melissa Buntaine at the recommendation of Rodney Franklin.

17.    Former New Breed Human Resources Generalist Mr. Franklin appeared for oral deposition on August 16, 2011.[28]  New Breed's Human Resources Manager Ms. Buntaine appeared for oral deposition on August 12, 2011.[29]  Mr. Franklin testified that he made no such recommendation.[30]  Ms. Buntaine could not recall him doing so.[31]

18.    Ms. Buntaine pointed to corporate counsel in North Carolina when asked who made the decision:

---

Answers to Plaintiff's Third Set of Interrogatories].

[28]    Mr. Franklin was an HR Generalist for Defendant in Texas.  *See* Appendix, p. 25 [Buntaine Deposition Transcript] ("Q.  Did Rodney Franklin work at New Breed when you started there?  A.  Yes, he did.  Q.  And what was his position?  A.  HR generalist."); *cf.* Appendix, p. 11 [Defendant New Breed Logistics, Inc.'s Responses to Plaintiff's Request for Disclosure] (noting he is a former employee and listing Mr. Franklin's Fort Worth, Texas, address).

[29]    Ms. Buntaine is a current HR Manager for Defendant in Texas.  *See* Appendix, p. 58 [Buntaine Deposition Transcript] ("Q.  And what is your title?  A.  Human resources manager."); *cf.* Appendix, p. 20 [Defendant New Breed Logistics, Inc.'s Supplemental Responses to Plaintiff's Request for Disclosures] (listing her address as "c/o New Breed 4320 N. Sylvania Ave Fort Worth, TX 76137").

[30]    *See* Appendix, pp. 89-90, 92-93 [Franklin Deposition Transcript] ("Q.  (By Ms. Gibson)  Ultimately, you recommended that Sulema Garza be fired, correct?  A.  Again, my answer would stay the same.  No, I gathered the information and handed it to my bosses, which a decision was made. . . .  Q.  And you're claiming you did not recommend that Ms. Garza be fired, correct?  A.  Correct.").

[31]    *See* Appendix, p. 60 [Buntaine Deposition Transcript] ("Q.  Do you recall what Rodney Franklin's recommendation was a month later?  A.  I do not recall the specific conversation that we had.  Q.  Do you recall what his recommendation was?  A.  No, I don't.  Q.  Do you recall if Rodney Franklin wanted to fire Sulema Garza?  A.  I don't specifically recall that, no.").

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO**
**QUASH AND FOR PROTECTION AND BRIEF IN SUPPORT — Page 11 of 24**

Q.      **Do you know who made the decision, the ultimate decision, final decision, to fire Sulema Garza**?

A.      The ultimate decision to fire after the second incident, **a recommendation would have been prepared, would have been reviewed by myself.  It would have gone up to our corporate office, and they would have made a final determination** on if they supported our recommendation.

Q.      And by "corporate," you're saying headquarters in Greensboro, North Carolina?

A.      Yes.

Q.      **And you recall specifically that a recommendation concerning Sulema Garza went to them and that this — your New Breed location received a response**?

A.      **Yes**.

Q.      **What department does it go to?**

A.      **General counsel.**

Q.      **Who is general counsel?**

A.      **Richard Valitutto.**[32]

She testified that any investigatory documents would have gone to the Director of Human Resources at the time — someone named "Nina" — who would meet with general counsel.[33]  Mr. Franklin put it this way:

Everything was pretty much blessed out of headquarters.  You did nothing

---

[32]     *See* Appendix, pp. 61-62 [Buntaine Deposition Transcript].

[33]     *See* Appendix, pp. 64-65 [Buntaine Deposition Transcript] ("Q.  Now, you said that's what's in place now.  At the time Sulema Garza was fired in the summer of 2008, do you know what actually took place at corporate once they received a recommendation?  A.  Yes.  What I recall is the paperwork was submitted to Nina.  I don't remember her last name, she's no longer with the company, but she was a director of HR at that time.  Everything would be faxed to her.  She would prepare the -- because she would be getting them from all over the company.  She would prepare her information and would meet with general counsel, and they would go through them one by one.  MS. SNYDER:  Object as nonresponsive.  Q.  When you say the information is faxed, what information are you talking about, the recommendation?  A. Recommendation for termination and any supporting documentation.  Q.  By supporting documentation, what do you mean?  A.  Usually any documentation that's gathered during an investigation.  If it's an attendance issue, it would be attendance records would go up with the termination request, as an example.").

without headquarters knowing about it.[34]

19.    According to Mr. Franklin, even for decisions less permanent than termination — such as suspensions — documentation first had to be sent to a vice president in North Carolina [Gene Corbett] and general counsel [Richard Valitutto].[35] For example, Mr. Franklin testified as follows:

> Q.    **Did corporate North Carolina need to be involved on a decision to suspend without pay**?

---

[34]    *See* Appendix, pp. 73-74 [Franklin Deposition Transcript] ("Q.   Once you complete an investigation, while you were working at New Breed, did you make any recommendations to Melissa Buntaine, concerning what should happen or -- or your impressions of the investigation?   A.   Well, my -- I was always asked my impressions of what I thought, since I was the one that actually did the investigation, but that's pretty much what that was, and that was passed on to Melissa and Denise, and then later the process itself, which is what you're asking me about, all those facts were -- was sent to corporate, to general counsel at corporate, which would have been Richard Valitutto, if I'm pronouncing his last name correct anyway.   Q.   So New Breed had a legal department?   A.   Yes, in corporate.   Q.   And where is corporate?   A.   Greensboro, North Carolina.   Q.   Okay.   So you're not talk about corporate locally, you're talking about headquarters?   A.   Right.   *Everything was pretty much blessed out of headquarters. You did nothing without headquarters knowing about it.*").

[35]    *See* Appendix, p. 75 [Franklin Deposition Transcript] ("Q.   Okay.   So corporate in North Carolina had to see documentation if anyone was going to be suspended, regardless of the nature of the suspension?   A.   Yes.   Q.   That was the process?   A.   Yes.   Q.   Was -- was there any particular person that the documentation would go to at corporate in North Carolina?   A.    Went to -- to Gene Corbett, our vice-president, and -- and our legal attorney, which was Richard Valitutto.").   On subsequent examination by Defendant's counsel, Mr. Franklin noted that he had *authority* to make suspension decisions and implied that corporate made the decisions for infractions that could involve termination. *See id.* at pp. 94-95 ("Q.   I want to talk to you first about process, as you understand it, in the human resources functions that you performed.   As an HR generalist, did you have the authority to suspend without -- let me start over.   As an HR generalist, did you have the authority to suspend an employee without corporate being consulted on the decision to suspend?   A.   Yes.   Q.   As an example, if -- if it -- you have a credible belief that an employee has engaged in disruptive behavior, do you have the authority, on your own, to suspend that employee?   A.   Yes, me along with my manager.   Q.   Okay.   Is it correct or incorrect to say that corporate makes the decision only when there's a -- an infraction -- a potential infraction that could involve termination?   A.   Yes.").

A.      **Yes. They also involved in — with pay**. Any suspension, they were — they were notified. Let's put it like that.

Q.      Okay. So corporate in North Carolina had to see documentation if anyone was going to be suspended, regardless of the nature of the suspension?

A.      Yes.

Q.      That was the process?

A.      Yes.

Q.      Okay. Was — was there any particular person that the documentation would go to at corporate in North Carolina?

A.      Went to — to Gene Corbett, our vice-president, and — and our legal attorney, which was **Richard Valitutto**.

* * * [Objection Omitted]

Q.      (By Ms. Gibson) Do you know what North Carolina corporate would then do once it received the paperwork?

A.      No.

Q.      **Do you know what type of feedback they would give to the Fort Worth location of New Breed, or whether they gave feedback?**

A.      **Well, I — I wasn't directly involved in that feedback, but I knew they had to give them feedback, because a decision had to be made**.

Q.      Who — who dealt with North Carolina corporate, in terms of any feedback?

* * * [Objection Omitted]

A.      Would have been my bosses.

Q.      (By Ms. Gibson) Your bosses?

A.      (Witness nods head.)

Q.      Melissa and Ms. Ball; is that right?

A.      Yes.

Q.      **And would Melissa Buntaine or Denise Ball then come to you and discuss what corporate had said?**

A.      **They would — they wouldn't discuss it.  They would let me know what the decision was** . . . . [36]

### Diligence


20.     Ms. Garza has diligently pursued this information — via written discovery and oral deposition — as this timeline shows:

---

[36]       *See* Appendix, pp. 42-43.

►     April 2010:  Plaintiff's Original Petition filed in state court.[37]

►     April 2010:  Plaintiff requests disclosure of persons with knowledge of relevant facts.

►     April 2010:  Plaintiff serves document requests seeking communications about termination.

►     June 2010:  Plaintiff agrees to extend Defendant's deadline to respond to document requests.

►     July 2010:  Defendant serves response to document request seeking communications about termination — but produces no correspondence with North Carolina.

►     February 2011:  Defendant supplements its production — but produces no correspondence with North Carolina.

►     February 18, 2011:  Defendant first lists Melissa Buntaine in its disclosures

►     March 1, 2011:  Plaintiff requests dates for depositions of Melissa Buntaine and Rodney Franklin [and others].

►     March 7, 2011:  Having received no requested dates for depositions, Plaintiff notices depositions for Melissa Buntaine [for March 19, 2011] and others and requests a corporate representative deposition.

►     March 10, 2011:  Defendant removes case to federal court.

►     March 23, 2011:  Court issues order stating that no discovery should be proceeding until a scheduling order is issued.

►     May 31, 2011:  Court issues Initial Scheduling Order

►     June 30, 2011:  Pursuant to agreement of the parties, outstanding written discovery served prior to removal was due

►     July 11, 2011: Ms. Garza again requests deposition dates

►     July 18, 2011: Ms. Garza again requests deposition dates due to lack of response

---

[37]     *See* Appendix, pp. 1-8 [Plaintiff's Original Petition].

►      July 29, 2011: After intervening communications, many of the requested depositions are scheduled to begin in August

## IV. ARGUMENT AND AUTHORITIES

### A.      No work product at issue

Federal law governs work product protections in a diversity case.[38]  The modern work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3).  The doctrine provides limited protection from disclosure of "documents and tangible things" that are "prepared in anticipation of litigation or for trial."[39]  It also provides conditional protection for "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."[40]  New Breed bears the burden of establishing entitlement to the protection.[41]

Here, New Breed submits no evidence concerning when it anticipated litigation.

---

[38]      *See Dunn v. State Farm*, 927 F.2d 869, 875 (5th Cir. 1991) (diversity case wherein the 5th Circuit applied state law to asserted attorney-client privilege and federal law to claims of work-product immunity); *Conoco v. Boh Brothers Construction Co.*, 191 F.R.D. 107, 118, n.6 (W.D. La. 1998); *see also* 6 Moore's Federal Practice §26.70[7] (Matthew Bender 3d ed.) (work product doctrine is governed by federal standard, even in diversity cases).

[39]      FED. R. CIV. P. 26(b)(3)(A).

[40]      FED. R. CIV. P. 26(b)(3)(B).

[41]      *Hodges, Grant & Kaufman v. U.S. Gov't, Dept. of Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985) ("The burden of establishing that a document is work product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production.").

Moreover, despite global, conclusory work product claims, it is almost inconceivable that New Breed anticipated litigation at the time of the events about which Ms. Garza seeks to question Mr. Valitutto.  Ms. Garza filed a Charge of Discrimination shortly <u>after</u> New Breed terminated her employment.  Mr. Valitutto's involvement in the suspension decision and termination decision about which Ms. Garza seeks to question Mr. Valitutto occurred well before any Charge of Discrimination was filed.

**B.**    <u>Texas attorney-client privilege rules allow deposition to move forward</u>

For a diversity case [such as this one][42] the state law of the forum — rather than federal common law — sets the attorney-client privilege rules.[43]  None of the cases New Breed cites concerning the *Shelton* factors address Texas state law.[44]  Texas state law on

---

[42]      *See generally* Defendant New Breed Logistics, Inc.'s Notice of Removal [Doc. 1] at p. 3 ¶ 7 ("This court has original jurisdiction in this cause pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship between Plaintiff and her prior employer, New Breed."); Plaintiff's Original Petition [attached as Tab 1 to Defendant New Breed Logistics, Inc.'s Notice of Removal [Doc. 1]] at p. 6 ¶ 16 ("Sulema asserts no claims in this, her Original Petition, for violation of any federal law").

[43]      *See Int'l Ins. Co. v. RSR Corp.,* 426 F.3d 281, 299 n.26 (5th Cir. 2005) ("The availability of a privilege in a diversity case is governed by the law of the forum state."); FED. R. EVID. 501 ("Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.").

[44]      *See Nguyen v. Excel Corp.,* 197 F.3d 200 (5th Cir. 1999) (federal law FLSA case); *Shelton v. Am. Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986) (Arkansas state claims in federal court within 8th Circuit); *Murphy v. Adelphia Recovery Trust,* No. 3:09-mc-

privilege is set forth in Texas Rule of Evidence 503.[45]   Texas law requires that a party

resisting discovery bear the burden of <u>showing</u> that a particular communication is

privileged.[46]

Moreover, Texas law on privilege is clear:  It will not foreclose deposition of an

attorney altogether <u>even if</u> certain communications may be privileged.[47]  The *Borden* case

is directly on point.   There, a plaintiff sued his former employer for wrongful

---

00105-B-BD (N.D. Tex. 2009) (miscellaneous case related to case pending in New York
federal court -- Civil Cover Sheet at Doc. 1-2 shows federal question jurisdiction); *Delor
v. Intercosmos Media Group, Inc.*, No. 2:04-cv-03262 (E.D. La. June 27, 2005) (case in
Louisiana federal court – Plaintiff's Second Amended Complaint [Doc. 46] asserts claims
under Florida and Louisiana law); *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, No.
2:01-cv-02193 (D. Kan. June 13, 2002) (alleging contract, tort, discrimination, and
retaliation claims in Kansas federal court).

[45]     *See* TEX. R. EVID. 503 ("Lawyer-Client Privilege").

[46]     *See, e.g., Borden, Inc. v. Valdez*, 773 S.W.2d 718, 720 (Tex. App.—Corpus
Christi 1989, orig. proceeding) ("However, not all statements and communications made
by a client to an attorney are privileged, and the burden is on the party resisting discovery
to show that the communication was, in fact, protected by the privilege.").

[47]     *See Borden*, 773 S.W.2d at 720 ("The attorney-client privilege was never intended
to foreclose any opportunity to depose an attorney, but rather only precludes those
questions which may somehow invade upon the attorney-client confidences. An attorney
may not avoid a deposition in its entirety merely because some matters may be
privileged, but must object when those inquiries are raised during the deposition."); *In re
Mason & Co. Prop. Mgmt.*, 172 S.W.3d 308, 313 (Tex. App.—Corpus Christi 1989, orig.
proceeding) ("As a more fundamental matter, however, a deposition may not be quashed
in its entirety on grounds that some of the matters to be explored may be privileged.  In
short, an attorney may be deposed, even if he or she represents a party to the litigation in
issue."); *Hilliard v. Heard*, 666 S.W.2d 584, 585 (Tex. App.—Houston [1st Dist.] 1984,
orig. proceeding) ("Whether or not such claims [of privilege] will be asserted is
conjectural until they are made of record, and the mere prospect that such privilege or
immunity will be urged on deposition does not justify prior restraint on the taking of a
deposition.").

termination.[48]  During discovery, the plaintiff learned that his former employer's in-house counsel was consulted by three employees prior to the termination.[49]  So, the plaintiff sought to depose the in-house counsel.[50]  The *Borden* court ruled that the attorney-client privilege to certain questions would not bar the deposition.[51]

Again, New Breed itself caused the need for Mr. Valitutto's deposition due to decision-maker finger pointing and conflicting accounts as to who made the adverse employment decisions in this case.  Making matters worse, Mr. Franklin [believed to have the retaliatory animus in this case] admittedly shredded his notes, deleted his emails, and deleted all electronic word processing documents concerning the investigation into Ms. Garza's complaints.[52]

Mr. Valitutto's affidavit indicates that he had veto power over employment decisions and thus injected himself into <u>making business decisions</u> for New Breed [rather

---

[48]    *See Borden*, 773 S.W.2d at 719 ("the real party in interest and plaintiff below, brought suit against relators alleging wrongful termination of employment in contravention of the Texas Workers' Compensation laws.").

[49]    *See id.* ("During the discovery process, [plaintiff] learned that [attorney], [employer]'s corporate labor counsel, was consulted by three of [employer]'s employees prior to [plaintiff]'s discharge and that [attorney] may be aware of relevant facts underlying the subject matter of the lawsuit.").

[50]    *See id.* ("[Plaintiff] thereafter sought to depose [attorney].").

[51]    *See id.* at 720.  ("The problem, however, is that no questions have been asked and we may only speculate as to the substance of what would be revealed should [in-house counsel] be deposed. This, we cannot do.  The attorney-client privilege was never intended to foreclose any opportunity to depose an attorney, but rather only precludes those questions which may somehow invade upon the attorney-client confidences.").

[52]    *See* Appendix, pp. 77-81.

than acting in a merely advisory capacity].  Indeed, he states that termination decisions "are <u>subject to</u>" his review.  Moreover, New Breed Human Resources employees testified that Mr. Valitutto actually <u>made</u> the ultimate decision to terminate Ms. Garza.[53]  One Human Resources employee also testified that Mr. Valitutto was involved at the suspension stage.[54]

### C.   Even if *Shelton* analysis potentially applied, the deposition should go forward

The Eighth Circuit has explained that the *Shelton* analysis "was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the <u>attorney's litigation strategy</u>."[55]  Thus, as one court has noted:

> . . . [T]he critical factor in determining whether the *Shelton* test applies is not the status of the lawyer as "trial counsel," but the extent of the lawyer's involvement in the pending litigation. If the lawyer has knowledge of relevant facts related to the subject matter of the litigation, and is merely advising the client with respect to the lawsuit, *Shelton* does not apply.[56]

Here, New Breed has not offered any evidence that Mr. Valitutto has played any role in this lawsuit beyond "merely advising the client with respect to the lawsuit."

---

[53]   *See supra* ¶¶ 16-19.

[54]   *See id.*

[55]   *Murphy v. Adelphia Recovery Trust*, No. 3-09-MC-105-B, 2009 WL 4755368, **2-3 (N.D. Tex. Nov, 3, 2009) (discussing *Shelton*).

[56]   *Id.* at *3.

Further, New Breed has not demonstrated that a deposition is likely to involve disclosure of any litigation strategy in this lawsuit.  As such, the *Shelton* analysis does not apply.[57]

Finally, even if the *Shelton* factors — which the Fifth Circuit has discussed but never explicitly adopted — potentially applied, Ms. Garza has met the requirements. Again, this is a "cat's paw" retaliation case — *i.e.*, Ms. Garza seeks to hold New Breed liable for the retaliatory animus of an employee who influenced, but did not make, the ultimate decision to fire Ms. Garza.[58]  As such, Ms. Garza has pursued, as she must, evidence concerning what precisely occurred at each stage of the decisional process as well as more general information concerning the overall decisional process itself. Further, courts have concluded that the very fact of conflicting or shifting accounts as to who made the relevant employment decisions may be evidence of pretext.

Witnesses have pointed to Mr. Valitutto as the person who made the ultimate decision to terminate Ms. Garza's employment.  One witness has further pointed to Mr. Valitutto as a person involved in an earlier unpaid suspension decision at issue in this case.  New Breed claims Ms. Garza "is misreading" the deposition testimony,[59] but it

---

[57]      *See id.; see also Advanced Technology Incubator, Inc. v. Sharp Corp.*, 263 F.R.D. 395 (W.D. Tex. 2009) (refusing to quash deposition in light of conflicting evidence of whether attorney was acting in business capacity or giving legal advice and expressly refusing to apply heightened standard to issue simply because proposed deponent had provided legal advice in suit).

[58]      *See generally Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2009) (discussing methods of establishing cat's paw liability in mixed motive cases).

[59]      *See* Motion, p. 3 ("Defendant believes Plaintiff is misreading the testimony.").

offers a deposition errata sheet and indicates another deposition errata sheet is expected.[60] If Ms. Garza was truly misreading the original deposition testimony, there would be no need for errata sheets changing the witnesses' answers on these issues.  New Breed's preferred version of conflicting testimony cannot foreclose permissible discovery.

Ms. Garza has otherwise demonstrated the *Shelton* factors of lack of other sources of the information, the relevance of the information, and the lack of privilege on the current record.

---

[60]     *See id*. at pp. 3-4 & Appendix to Motion, Exhibit D.

Respectfully submitted,


s/ Amy Gibson
_____
David L. Wiley
Texas State Bar No. 24029901

Amy E. Gibson
Texas State Bar No.  00793801

**Gibson Wiley PLLC**
1700 Commerce Street, Suite 1570
Dallas, Texas 75201-5302
Telephone:  (214) 522-2121
Facsimile:  (214) 522-2126
E-Mail Addresses:
    david@gwfirm.com
    amy@gwfirm.com

Enrique Chavez, Jr.
Texas State Bar No. 24001873

**Chavez Law Firm**
2101 Stanton Street
El Paso, Texas 79902
Telephone:  (915) 351-7772
Facsimile:  (915) 351-7773
Email Address:
    chavezlaw7773@sbcglobal.net

ATTORNEYS FOR
SULEMA GARZA

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 27, 2011, the foregoing Plaintiff's Response to Defendant's Motion to Quash and for Protection and Brief in Support will be served on Defendant New Breed Logistics, Inc., through its lead counsel of record, as follows:

**VIA CM/ECF SYSTEM**

Mr. Michael R. Buchanan
Ms. Kristin M. Snyder
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
8117 Preston Road, Suite 700
Dallas, Texas 75225

s/ Amy Gibson
_____

Amy E. Gibson