IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SULEMA GARZA | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-161-Y |
| | § | Relates to Motion Referred to |
| NEW BREED LOGISTICS, INC., | § | Magistrate Judge Cureton |
| ET AL. | § | |

## ORDER DENYING AMENDED MOTION TO QUASH

Before the Court is the Amended Motion to Quash and for Protection of Defendant New Breed Logistics, Inc. ("New Breed"), which seeks to quash the deposition notice of its vice president and general counsel served by Plaintiff Sulema Garza ("Garza") on August 26, 2011. [Doc. # 29.] After reviewing the motion, Garza's response, and New Breed's reply, the Court concludes that New Breed's Amended Motion to Quash and for Protection should be **DENIED**, subject to the terms and conditions of this order.

### I. FACTUAL BACKGROUND

This discovery dispute arises out of Garza's employment discrimination lawsuit against New Breed in which she alleges that New Breed discriminated against her because of her sex and fired her in retaliation when she complained of sex-based harassment. On August 26, 2011, Garza served New Breed with a notice scheduling the deposition of Richard Valitutto ("Valitutto"), New Breed's vice president and general counsel who is located at the company's headquarters in North Carolina, for August 31, 2011, in Dallas. Three days later, New Breed filed a motion to quash, and the Court entered an order on August 31, 2011, temporarily quashing the deposition notice.

In the August 31 Order, the Court gave the parties a final opportunity to make a good-faith attempt to resolve this discovery dispute on their own and reminded the parties that, if they did not,

sanctions would be imposed upon any party found to be conducting or opposing discovery unreasonably, in bad faith, or otherwise not in compliance with the rules of civil procedure or the standards of conduct for counsel set forth in *Dondi Properties Corp. v. Commerce Savings & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc & per curiam). The Court further ordered that, if the parties resolved part (but not all) of their discovery dispute, then New Breed would file an amended motion as to the remaining disputed matters only.

New Breed filed its amended motion as ordered on September 20, 2011, and the Court referred the amended motion to the undersigned for determination. *See* 28 U.S.C. § 636(b)(1)(A). In the amended motion, New Breed reported that the parties had met two times to attempt to resolve their discovery dispute and had come to an agreement as to the place, date and time, and method of conducting the deposition (*i.e.*, option of using videoconferencing technology). The parties could not, however, agree on whether Garza could properly depose Valitutto. In sum, New Breed argues in its amended motion that Valitutto's involvement in the events underlying Garza's lawsuit was limited to providing a legal review of the decision to terminate Garza's employment, and, therefore, the subject matter of his testimony is attorney work-product and is protected by the attorney-client privilege. The issues are fully briefed and ripe for determination.

## II. DISCUSSION

Federal Rule of Civil Procedure 26 permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A court may limit the discovery, however, if the "burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). Rule 26(c) authorizes a court, for good cause, to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." New Breed, as the party seeking a protective order to prevent a deposition,

bears the burden of establishing the necessity of the order. *See In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998); *see also Williams ex rel. Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002) (Kaplan, J.) (stating that the party moving for a protective order must show good cause and specific need for protection).

New Breed argues that the Court should quash Valitutto's deposition because permitting one counsel to depose opposing counsel is "disfavored generally and should be permitted in only limited circumstances." *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999). Indeed, requiring opposing counsel to testify as a witness disrupts the adversarial nature of the judicial system and has long been discouraged. *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (citing *Hickman v. Taylor*, 329 U.S.495, 513, 516 (1947)).

In *Shelton*, the plaintiffs sought to depose an attorney employed by the corporate defendant in its litigation department who was assigned specifically to supervise the defense of the plaintiffs' lawsuit. *Id.* at 1325. The plaintiffs intended to ask the in-house counsel about the existence or nonexistence of various documents in the company's possession to determine whether the company had fully complied with the plaintiffs' discovery requests. *Id.* at 1327. The *Shelton* court recognized that opposing trial counsel is not absolutely immune from being deposed, but it went on to state that a party may take the deposition of opposing counsel only if it can show that (1) there are no other means to obtain the information sought; (2) the information is relevant and not privileged; and (3) the information is crucial to the preparation of the case. *Id.* Because the *Shelton* plaintiffs could not satisfy these requirements, the court held that they had not presented the type of "limited circumstances" under which taking opposing counsel's deposition was warranted. *Id.*

## A.   Is Valitutto an "Opposing Counsel"?

As a threshold matter, Garza argues that the *Shelton* factors do not apply to this case because Valitutto has not and does not serve as opposing counsel and, therefore, deposing him will not likely involve disclosure of New Breed's litigation strategy.[1] *See Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002) ("The *Shelton* test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy.").

In support of her position, Garza cites *Murphy v. Adelphia Recovery Trust*, No. 3-09-MC-105-B, 2009 WL 4755368, at *3 (N.D. Tex. Nov. 3, 2009), which states that if a lawyer "has knowledge of relevant facts related to the subject matter of the litigation, and is merely advising the client with respect to the lawsuit, *Shelton* does not apply." In this way, Garza claims that *Shelton* does not apply to this matter because Valitutto has not played a role beyond "merely advising the client with respect to the lawsuit."

### 1.   *Evidence of Valitutto's Role in the Lawsuit*

According to Valitutto's affidavit testimony, his involvement in Garza's firing was limited to a "legal review" of the decision to terminate her employment:

---

[1] While *Shelton* has not been explicitly adopted by the Fifth Circuit, courts within the Fifth Circuit have analyzed the same three factors in determining whether to authorize the deposition of opposing counsel. *See, e.g., Nguyen*, 197 F.3d at 209; *Murphy v. Adelphia Recovery Trust*, No. 3-09-MC-105-B, 2009 WL 4639689, at *1 n.1 (N.D. Tex. Dec. 8, 2009).
    Furthermore, both parties briefed the *Shelton* factors, although Garza asserts that Texas law on attorney-client privilege should apply to the issue of the propriety of deposing an attorney. In diversity-jurisdiction cases, federal courts apply state substantive law to the claims and federal procedural law to the proceedings. *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991); *see also Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Garza is correct that Texas law applies to New Breed's claim of attorney-client privilege. *See* Fed. R. Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with State law."). However, the authority for the protection that New Breed seeks comes from the federal rules of civil procedure; therefore, applying federal procedural law to this threshold issue of the propriety of deposing an attorney is appropriate. *See* Fed. R. Civ. P. 26(c) (authorizing a court to protect a party from discovery requests that would impose "annoyance, embarrassment, oppression, or undue burden or expense"); *see also Cates*, 928 F.2d at 687.

At New Breed, employee termination decisions in general, and in [the] case of Sulema Garza, are/were made at the local level, but are subject to my legal review. My only involvement with regard to Garza has been as an attorney for New Breed and my personal knowledge regarding the facts of this particular case is limited to my participation in a legal review of the decision made to terminate Garza. I did not investigate the facts relating to the disciplinary actions involving Sulema Garza. I did not interview witnesses. I did not prepare disciplinary action forms nor participate in the preparation of their contents. My sole involvement with the disciplinary actions involving Sulema Garza was to provide legal review and advice for the disciplinary decisions made at the local plant level.[2]

(Def.'s Am. Mot. App. 5.)

In addition, Melissa Buntaine, the human resources manager at the local New Breed place of business where Garza worked, testified that Valitutto provided a "legal review" of the recommendation to terminate Garza:

Q.    Do you know who made the decision, the ultimate decision, final decision, to fire Sulema Garza?

A.    Rodney Franklin [a local New Breed human resources employee] made the recommendation to terminate Garza and that recommendation was approved by me and HR Director Denise Ball. Prior to the implementation of the decision to terminate, either Denise or I consulted with the company's general counsel, who performs a legal review. Upon completion of the legal review, the Company implemented HR's recommendation. The decision was also approved by Rick Staton and Rick Haines.[3]

(Id. at 9–10.)

_____

[2]New Breed also provided an affidavit of James Valdez, the current human resources director at New Breed's Fort Worth location. (Def.'s Am. Mot. App. 7.) He explained that, as a "general rule," New Breed's human resources personnel consult with the company's general counsel before implementing disciplinary or termination decisions made at the local plant level. According to Valdez, "[w]hen consulting with the general counsel, the expectation and belief of the local HR staff is that we are receiving legal advice from the General Counsel." (Id.) Although Valdez was not the New Breed human resources director at the time of the events underlying this lawsuit, Valdez reviewed the documentation related to Garza's disciplinary actions and concluded that this procedure had been followed with respect to Garza's termination. (Id.)

[3]The source of this testimony is the deposition errata sheet, in which Buntaine stated that she changed her original testimony "to clarify what did happen." Garza does not address this testimony in her response, stating that New Breed cannot challenge Valitutto's deposition notice based on its "preferred version of conflicting testimony." But the rules of civil procedure allow a witness to review her deposition transcript and, "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e)(1). This is what Buntaine's errata sheet does, and Garza does not cite any authority for her belief that the Court cannot consider the testimony.

Finally, Rodney Franklin, another New Breed human resources employee, testified in his deposition that he "wrote up" Garza's final disciplinary infraction at New Breed as a "suspension pending termination," which was subject to the review of others "higher up in the chain of command." (Def.'s Reply App. 3.) Franklin also testified that "corporate North Carolina" was "notified" of any employee suspension and would give the local office "feedback" on their documentation supporting a recommended suspension. (Pl.'s Resp. App. 75–76.) He stated, "Everything was pretty much blessed out of headquarters. You did nothing without headquarters knowing about it." (*Id.* at 74.) Also, testimony elicited by New Breed's lawyer indicated that Franklin, at least, believed that "corporate" was involved in termination decisions:

> Q.   As an example, if -- if it -- you have a credible belief that an employee has engaged in disruptive behavior, do you have the authority, on your own, to suspend that employee?
>
> A.   Yes, me along with my manager.
>
> Q.   Okay. Is it correct or incorrect to say that corporate makes the decision only when there's a -- an infraction -- a potential infraction that could involve termination?
>
> A.   Yes.

(*Id.* at 95; *see also id.* at 92 (testifying that because Garza's infraction resulted in a suspension pending termination, Buntaine "probably had a discussion with Denise [her supervisor] and moved it on to corporate, a decision is made from corporate")).

### 2.   *"Opposing Counsel" Activities and Roles*

Not all lawyers are automatically considered "opposing counsel" for purposes of the *Shelton* test. The "critical factor" in determining whether a lawyer is opposing counsel is "the extent of the lawyer's involvement in the pending litigation." *Murphy*, 2009 WL 4755368, at *3. As Garza points out, if a lawyer "has knowledge of relevant facts related to the subject matter of the litigation, and

is merely advising the client with respect to the lawsuit, *Shelton* does not apply." *Id.* On the other hand, if a lawyer is "actively involved in trial preparation," then the lawyer is considered an opposing counsel and is entitled to the protection against depositions that *Shelton* contemplates. *Id.* Accordingly, an evaluation of the lawyer's activities and roles with regard to the litigation is crucial in determining whether protection from deposition is necessary in a given case.

Both of the cases cited by the *Murphy* court as support for its declaration that a lawyer who merely advises a client with respect to a lawsuit is not an opposing counsel involved attorneys who performed, and would be questioned about, duties unrelated to the litigation at hand. *See Anserphone of New Orleans, Inc. v. Protocol Commc'ns, Inc.*, No. Civ. A. 01-3740, 2002 WL 31016572 (E.D. La. Sept. 10, 2002); *United States v. Philip Morris Inc.*, 209 F.R.D. 13 (D.D.C. 2002). In *Anserphone*, a breach of contract case, the attorney who negotiated the underlying contract was not an opposing counsel for purposes of the *Shelton* test because his involvement was limited to negotiating and drafting the underlying contract and monitoring its performance—all nonlitigation-related matters. 2002 WL 31016572, at *2; *cf. Murphy*, 2009 WL 4755368, at *3 (holding that the finance attorney who negotiated and drafted credit facility documents did qualify as opposing counsel in later bankruptcy-related litigation because she served on the trial team by participating in strategy discussions, editing pleadings, meeting with witnesses, and collecting and reviewing documents).

In *Philip Morris*, a tobacco company's in-house lawyers were not opposing counsel in the underlying tobacco litigation because they had knowledge of nonprivileged, prelitigation, factual matters relating to topics such as public relations, corporate decision-making, marketing strategies, and tobacco research and development. Furthermore, the party noticing their depositions represented that it would seek testimony about these nonprivileged matters only. 209 F.R.D. at 17; *see also*

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 263 F.R.D. 395, 398 (W.D. Tex. 2009) (holding that attorney was not opposing counsel in light of conflicting evidence regarding the type of services provided to the client—whether purely legal, or also business- or financial-related).

Here, the evidence provided to the Court does not show that Valitutto's involvement in this litigation was of a nature to qualify him as an opposing counsel who needs *Shelton*'s protection from being deposed. First, the evidence is less than clear regarding New Breed's disciplinary process. While some witnesses asserted that all termination decisions were made at the local level and Valitutto provided only a "legal review," other witnesses testified that "the Company" implemented the recommended termination decisions and that "corporate makes the decision" when infractions triggering termination were involved. New Breed itself offered to stipulate that the decision to suspend Garza pending termination "was self-implementing unless Mr. Valitutto vetoed or suspended the decision after legal review." (Def.'s Am. Mot. 4.) Accordingly, these conflicting interpretations of the roles played by Valitutto, "the Company," or "corporate"—all provided by New Breed's own witnesses—weigh against the necessity of foreclosing Valitutto's deposition entirely.

Second, unlike *Shelton*, there is no indication that Garza seeks to depose Valitutto about New Breed's defense or litigation strategy related to this case. Valitutto is not the trial attorney of record, and no evidence before the Court indicates that he has supervised the trial attorneys, has participated in planning or strategy, or has otherwise been involved with the litigation of this case in any way. The *Shelton* protection against taking the deposition of opposing counsel, however, is based on the concern that the discovery rules should not be used "to enable a learned profession to perform its functions . . . on wits borrowed from the adversary." *Hickman*, 329 U.S. at 516 (Jackson, J., concurring), *quoted in Shelton*, 805 F.2d at 1327.

Furthermore, "*Shelton* sought to prevent counsel from using the deposition of opposing trial counsel to 'short-cut' the discovery rules: 'counsel's tasks in preparing for trial would be much easier if he could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy.'" *Philip Morris*, 209 F.R.D. at 18 (quoting *Shelton*, 805 F.2d at 1327). Because New Breed has not shown that Valitutto is involved in the litigation of Garza's claims, the dangers that *Shelton* sought to prevent are not implicated in this case. Based on the evidence provided, the Court concludes that Valitutto's activities and role in this matter has been limited to "merely advising the client with respect to the lawsuit." *Murphy*, 2009 WL 4755368, at *3.[4] His involvement in trial preparation and strategy is nonexistent. Therefore, Valitutto's position is not that of an opposing counsel in this case, and the *Shelton* factors do not apply.

**B.    Should Valitutto's Deposition Be Limited?**

New Breed asserts that deposing Valitutto is unnecessary because all communications between New Breed and Valitutto are protected by the attorney-client and work-product privileges. However, "blanket claims of privilege are disfavored." *Nguyen*, 197 F.3d at 206 n.16. Garza has represented that she needs to depose Valitutto to learn who made the adverse employment decision in this case and to discover "evidence concerning what precisely occurred at each stage of the

---

[4]New Breed cites *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, No. 01-2193-JWL, 2002 WL 1822404 (D. Kan. 2002), for the proposition that *Shelton* applies to protect an in-house attorney from deposition in an employment discrimination case. In *Horizon Holdings*, the court held that the in-house attorney qualified as opposing counsel because she had "acted as a legal advisor to Defendants in connection with the events underlying this litigation." *Id.* at *3. However, the court did not analyze the in-house attorney's involvement in the actual litigation of the case or examine the deposition notice in light of the policies underlying *Shelton*. If courts allow *Shelton* to apply whenever an attorney merely acts as a legal advisor to a defendant, without requiring more connection to the litigation process itself, defendants could "immunize themselves from discovery on key issues, by knowingly and strategically placing persons who happen to be attorneys in positions where they perform critical business, marketing, public relations, research, scientific and development duties." *Philip Morris*, 209 F.R.D. at 18. Accordingly, the Court finds the reasoning of *Horizon Holdings* unpersuasive.

decisional process as well as more general information concerning the overall decisional process itself."

The discovery rules allow Garza to seek information regarding any matter relevant to the claims and defenses in her lawsuit, provided, of course, that the information is not privileged. *See* Fed. R. Civ. P. 26(b)(1). Therefore, the Court directs that Garza's deposition of Valitutto will be limited to the discovery of information that (1) is not protected from disclosure by the attorney-client privilege or the work-product doctrine and (2) pertains to prelitigation factual matters separate and apart from New Breed's litigation strategy in this case.[5] The line between that nonprivileged, prelitigation information and information protected by attorney-client/work-product privileges should be clear to all counsel. The Court does not expect, and strongly discourages, additional motions practice over these privilege issues.

### III.  CONCLUSION

Based on the foregoing, it is **ORDERED** that New Breed's Amended Motion to Quash and for Protection [doc. # 29] is **DENIED**. Garza may proceed with the deposition of Richard Valitutto subject to the terms and conditions of this order.

SIGNED November 16,  2011.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

---

[5]This means that Garza shall not depose Valitutto about the defense or litigation strategies related to this case.